IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KIMBERLY JEANQUART o/b/o
J.A.J.                                                                          PLAINTIFF


         v.                              CIVIL NO. 09-3080


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT


<u>**MEMORANDUM OPINION**</u>

Plaintiff, Kimberly Jeanquart, brings this action on behalf of her minor daughter, J.A.J.,

seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of

the Social Security Administration (Commissioner) denying J.A.J's application for child's

supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

**I.      Procedural Background:**

Plaintiff protectively filed the application for SSI on J.A.J.'s behalf on November 22,

2006, alleging that J.A.J. is disabled due to chronic asthma and mild neurocognitive dysfunction.

(Tr. 86-88, 94).  An administrative hearing was held on March 26, 2009, at which Plaintiff, J.A.J.

and S.L.J., Plaintiff's other daughter, testified.  (Tr. 7-34).  Plaintiff was represented by counsel.

The ALJ, in a written decision dated May 6, 2009, found that J.A.J. was not disabled, as

J.A.J. did not have an impairment that met or was medically or functionally equal to a listed

impairment.  (Tr. 48).  The ALJ specifically stated he considered the Listings 103.03 (asthma)

and  112.02 (organic mental disorder) when making his determination.  (Tr. 48).

Plaintiff then requested a review of the hearing decision by the Appeals Council which denied that request on October 13, 2009 (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8,9).

## II.    Evidence Presented:

At an administrative hearing held before the ALJ on March 26, 2009, Plaintiff testified that she filed for disability on behalf of her daughter, who was fifteen years of age, because she thought:

> it would benefit her [J.A.J.] to know that she will have a way to be able to pay her medical bills and whatever bills that she may need to pay because, I think, it's going to be hard for her in the workforce to be able to understand direction.

(Tr. 13). Plaintiff testified that she and her husband were not able to pay for J.A.J.'s medical care. (Tr. 14). Plaintiff testified that J.A.J. was on ARKids but that some of the medications that J.A.J.'s treating physicians wanted her to take were not covered. (Tr. 14). Plaintiff testified that J.A.J. was also having a hard time focusing and following directions and that J.A.J. also told Plaintiff that she was depressed. (Tr. 15). Plaintiff testified that when J.A.J. was on Advair, a drug no longer on the ARKids list, J.A.J.'s symptoms were much better. (Tr. 16). Plaintiff testified that J.A.J.'s lung condition had been staying about the same over time. Plaintiff testified J.A.J. had problems due to her asthma about once a month but J.A.J. was able to do things to control her asthma. Plaintiff testified J.A.J. used an updraft machine about once a month. (Tr. 18). Plaintiff testified that prior to J.A.J. losing consciousness, which had not occurred for about two years, J.A.J. would complain about her back hurting and she would cough a lot.

-2-

J.A.J. testified that the Advair helped with her asthma but that she still had trouble. (Tr. 22). J.A.J. testified that she had problems with the coughing and wheezing and that it kept her up at night. J.A.J. testified prior to her losing consciousness she would get a headache and her back would ache and she just felt weak. (Tr. 23). J.A.J. could not remember the last time she lost consciousness but J.A.J. thought it was about two years ago. J.A.J. testified that she felt depressed because she was stuck in an atmosphere where she could not breathe. (Tr. 25). J.A.J. testified that she often lost track of her thoughts during a conversation. J.A.J. testified that she was held back a year, last year, because she missed so much school because of her asthma. (Tr. 27-28). J.A.J. testified that she had thought about killing herself and had come close to popping a whole bunch of pills to "end it all." J.A.J. testified that her asthma was getting in the way with her grades at school. J.A.J. testified that she often had trouble comprehending what her teachers were telling her to do in class.

S.L.J., J.A.J.'s sister, testified she had observed J.A.J. having problems that J.A.J. testified to concerning asthma and depression. (Tr 31-32). S.L.J. testified that she and her sister had trouble getting along due to J.A.J.'s inability to understand things and having to repeat things so many times.

Prior to the relevant time period, medical evidence reflects J.A.J. was treated for asthma, eczema, a chin laceration, a knee laceration and that J.A.J. had been admitted into the hospital for reactive airway disease, hypoxia and asthma in November 2001, January 2002, October 2002, February 2003, and August 2005. (Tr. 156-180, 183-233).

The medical evidence during the relevant time period reflects the following. On October 13, 2006, J.A.J. underwent a neuropsychological evaluation performed by Dr. Vann Arthur

-3-

AO72A
(Rev. 8/82)

Smith.  (Tr. 238-242).  Dr. Smith noted J.A.J. reported that she was in the sixth grade and was maintaining "fairly good" grades and motivation.  Dr. Smith noted Plaintiff was positive for significant chronic airway disease (asthma).  Upon evaluation, Dr. Smith noted J.A.J. was oriented in all spheres and her memory was intact.  J.A.J.'s affect was noted as somewhat muted but flexible.  J.A.J.'s mood was noted as moderately anxious.  Dr. Smith opined J.A.J.'s native intelligence was estimated to lie within the normal range. After reviewing test results, Dr. Smith diagnosed J.A.J. with mild neurocognitive dysfunction, secondary to a general medical condition. Dr. Smith opined J.A.J. did not have a low IQ or reduced intellectual functioning.  He also opined J.A.J. would miss about four days of work each month. Dr. Smith recommended J.A.J. be further evaluated by a pediatric "physiatrist."

Dr. Smith also completed an adult Mental RFC Questionnaire on October 27, 2006, opining J.A.J. was unable to meet competitive work standards in six areas; was seriously limited but not precluded in seven work areas; and was limited but satisfactory in eleven work areas. (Tr. 243-247).

On November 13, 2006, Dr. Frazier Kennedy, a non-examining medical consultant, opined J.A.J. had the following impairments: RAD (reactive airway disease) and neurocognitive dysfunction. (Tr. 258-263). Dr. Kennedy opined J.A.J. had "no limitation" in the areas of attending and completing tasks, interacting and relating with others, moving about and manipulating objects and caring for yourself; and "less than marked" limitations in the areas of acquiring and using information and health and physical well-being.  With regard to acquiring and using information, Dr. Kennedy noted the following:

The IQ's are in the 90's and further testing refers to a mild diffuse organic brain

-4-

dysfunction. The claimant is on grade level with the exception of math.

(Tr. 260).  With regard to health and physical well-being, Dr. Kennedy opined:

> There is a diagnosis of RAD and, in the past, the claimant has required several admissions. The MER indicates that the RAD is better but does not require frequent use of her MDI.

(Tr. 261).

On November 19, 2006, Dr. Kevin T. Jackson completed a Pulmonary Residual Functional Capacity Questionnaire.  (Tr. 234-237).  Dr. Jackson reported for the past two years he had treated J.A.J. for asthma bi-monthly.  Dr. Jackson noted J.A.J. had been hospitalized frequently and her medications were "maxed out." Dr. Jackson reported J.A.J. had weekly asthma attacks that left J.A.J. incapacitated for 2 plus days. Dr. Jackson opined J.A.J.'s limitations were reasonably consistent with the symptoms and functional limitations.  Dr. Jackson found the work limitations portion of the questionnaire was not applicable to J.A.J.  Dr. Jackson opined J.A.J. should avoid even moderate exposure to extreme cold, extreme heat, high humidity, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals.  Dr. Jackson opined J.A.J.'s impairment would produce "good days" and "bad days."

On January 31, 2007, Dr. Stephen A. Whaley, a non-examining medical consultant, opined J.A.J. had the following medical impairments: asthma and mild neurocognitive dysfunction. (Tr. 250-255).  Dr. Whaley further opined J.A.J. had "no limitation" in the areas of attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and  caring for oneself. Dr. Whaley opined J.A.J. had "less than marked" limitations in the area of acquiring and using information. With regard to this area of functioning,

-5-

Dr. Whaley stated:

> 10/13/06 NEUROPSYCHOLOGICAL EVALUATION.
> WISC-R: 98-92-95. Other test revealed mild diffuse organic brain dysfunction.
> 1/17/07 Teacher reports show child in 6th grade regular classes and functions on grade level except in math. She does have problems comprehending and following instructions.

(Tr. 252).  With regard to health and physical well being, Dr. Whaley opined J.A.J. had "less than marked" limitations.  Dr. Whaley made the following statements regarding this area of functioning:

> Long history of asthma with multiple admissions in the distant past. TMD says she continues to have episodic attacks with SOB and wheezing.  Teacher notes no problems with her asthma in the classroom but the school nurse says she gives her the MDI frequently.

(Tr. 253).

On May 6, 2008, J.A.J. underwent a consultative mental diagnostic evaluation performed by Dr. Stephen R. Harris.  (Tr. 264-274).  Dr. Harris noted that he had been provided a copy of Dr. Smith's evaluation performed on October 13, 2006, and had reviewed the results prior to his evaluation of J.A.J.  Dr. Harris noted J.A.J. reported she was upset and frustrated with her asthma.  J.A.J. was noted to be in the seventh grade and in regular classes but received some assistance through other health impaired programs.  J.A.J. reported she got along with her peers "so so."  Dr. Harris noted Plaintiff had problems with sleeping due to breathing difficulties and that she had friends with whom she associated.  J.A.J. denied homicidal or suicidal ideation and denied any suicide attempts. Dr. Harris noted that J.A.J. had some difficulties with some concentration skills and possibly at time comprehension.  He noted J.A.J. also seemed to have difficulty with some anxiety and frustration concerning her physical condition.  Dr. Harris

-6-

diagnosed J.A.J. with attention deficit/hyperactivity disorder, nos; anxiety disorder due to asthma and related breathing difficulties; and a global assessment of functioning score of 54.

Dr. Harris also completed a Childhood Disability Assessment opining J.A.J. had "less than marked" limitations in the areas of acquiring and using information and attending and completing tasks; and "no limitations" in the areas of interacting and relating to other, moving about and manipulating objects and caring for yourself. Dr. Harris opined Plaintiff was between "less than marked" and "marked" limitation in the area of health and physical well-being.

The record contains assessments from two of J.A.J.'s teachers. On January 10, 2007, Ms. Lyn Moore, J.A.J.'s home room and math teacher, completed a Teacher Questionnaire. (Tr. 133-140). Ms. Moore reported J.A.J.'s actual grade level was sixth, and that J.A.J.'s reading level was low fifth and her math and written language levels were sixth. Ms. Moore noted J.A.J. missed one week of school in September and that J.A.J had missed several days due to lice. With regard to acquiring and using information, Ms. Moore stated

> [J.A.J.] is a very hard worker but at times does have problems recalling previously learned math problems as well as learning new material. She is generally very independent but on occasion has had assistance from a tutor.

(Tr. 134). Ms Moore opined J.A.J. had no problems with attending and completing tasks; interacting and relating with others; or moving about and manipulating objects. As for caring for herself, Ms. Moore reported J.A.J. had been sent home on several occasions due to lice. Ms. Moore noted that J.A.J. had asthma but that J.A.J. had not yet had a problem with it at school. Ms. Moore noted J.A.J. did not frequently miss school due to illness.

On September 18, 2007, Ms. Lisa Methvin, J.A.J.'s literacy teacher, completed a Teacher Questionnaire. (Tr. 141-148). Ms. Methvin reported J.A.J.'s actual grade was sixth and that

AO72A
(Rev. 8/82)

her reading and writing levels were proficient for her grade level and that J.A.J.'s math level was below grade level. Ms. Methvin reported J.A.J. had been sent home from school an excessive amount of days because of personal hygiene as per school policy issues. With regard to acquiring and using information, Ms. Methvin stated

> [J.A.J.] most often needed oral & written directions given to her 1-on-1 from the instructor.  This occurred after whole group directions were given or students were asked to read & follow directions independently.

(Tr. 142).  Ms. Methvin noted J.A.J.'s problems in this area of functioning to be "a slight problem."  With regard to attending and completing tasks, Ms. Methvin reported J.A.J. had a "slight problem" daily with paying attention when spoken to directly; focusing long enough to finish assigned activity or task; carrying out multi-step instructions; and completing work accurately without careless mistakes.  Ms. Methvin also noted J.A.J.'s breathing problems sometimes inhibited her physical activities. Ms. Methvin reported J.A.J. had no problems with interacting and relating with others. Ms. Methvin reported J.A.J. had to use her inhaler and leave the classroom during instruction several times to go to the nurse's office.  Ms. Methvin noted once J.A.J. used the inhaler she could function in the classroom and that J.A.J. had missed school due to this illness at times but not frequently.

## III.    Discussion:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d

-8-

964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the Court would have

decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ

must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination.

First, the ALJ must determine whether the child has engaged in substantial gainful activity.  See

20 C.F.R. 416.924(b).  Second, the ALJ must determine whether the child has a severe

impairment or combination of impairments.  See 20 C.F.R. 416.924(c).  Third, the ALJ must

determine whether the severe impairment(s) meets, medically equals, or functionally equals a

listed impairment.  See 20 C.F.R. § 416.924(d).  In the present case, the ALJ found that J.A.J.'s

claim failed at step three, as J.A.J. did not have an impairment that met or medically or

functionally equaled a listed impairment.  The ALJ specifically considered the Listings in 103.03

and 112.02 when making this determination.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

First, we find there is substantial evidence on the record to support the ALJ's

determination that J.A.J.'s impairments do not meet or medically equal in severity any listed

impairment.  See 20 C.F.R. Part 404, Subpt. P, App. 1, Part B.  We next address whether J.A.J.'s

impairments are functionally equal to any listed impairment, or, in other words, whether "what

[J.A.J.] cannot do because of [her] impairments . . . is functionally equivalent in severity to any

listed impairment that includes disabling functional limitations in its criteria."  20 C.F.R. §

-9-

416.926a(a).

Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations in one of the following areas: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. See 20 C.F.R. § 416.92a(d). The ALJ determined that the facts in this case suggest J.A.J. had no significant limitation in the areas of interacting and relating with others, moving about and manipulating objects and caring for yourself ; and "less than marked" limitation in the areas of acquiring and using information, attending and completing tasks and health and physical well-being.

We will now address each of the ALJ's domain determinations. With regard to acquiring and using information, the ALJ found J.A.J. had "less than marked" limitations. In making this determination, the ALJ thoroughly discussed all the evidence, including the opinions of Dr. Smith and Dr. Harris, and clearly stated why the ALJ gave more weight to Dr. Harris's opinion and the basis for giving less weight to Dr. Smith's opinion. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir.2002) (it is the ALJ's function to resolve conflicts among the various treating and examining physicians). The ALJ noted Dr. Harris's diagnosis of ADHD and that J.A.J. would have some difficulties with following directions. The ALJ pointed out that after the evaluation and reviewing J.A.J.'s scores, Dr. Harris opined that J.A.J.'s difficulties with concentration and attention were relatively minor and that J.A.J. would be able to complete work-like tasks in an acceptable time frame. Dr. Harris also opined that J.A.J. would have "less than marked" limitations with acquiring and using information. The ALJ also addressed the opinions of J.A.J.'s teachers and noted that while J.A.J was noted to have some difficulties in this area of

-10-

functioning, J.A.J. was also generally independent but on occasion needed the help of a tutor. Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.A.J. had "less than marked limitations" in this area of functioning.

With regard to attending and completing tasks, the ALJ found J.A.J. had "less than marked" limitations. In making this determination the ALJ noted Dr. Harris's opinion that J.A.J. would have some difficulties with concentration skills and time comprehension. However, even with these limitations, Dr. Harris opined J.A.J. limitations in this area of functioning would be "less than marked." Furthermore, Ms. Moore indicated that J.A.J had no problems in this area of functioning while Ms. Methvin opined J.A.J. had a "slight problem" daily with paying attention when spoken to directly; focusing long enough to finish assigned activity or task; carrying out multi-step instructions; and completing work accurately without careless mistakes. Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.A.J. had "less than marked limitations" in this area of functioning.

With regard to interacting and relating with others, the ALJ found J.A.J. had no limitations. In making this determination, the ALJ noted J.A.J.'s sister's testimony that they sometimes did not get along but also discussed that J.A.J.'s teachers both indicated J.A.J. did not have any difficulty interacting or relating with others. Plaintiff also indicated in a Function Report dated August 13, 2007, that J.A.J.'s impairments did not affect J.A.J.'s social activities or behavior with other people. (Tr. 123). Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.A.J. had no limitations in this area of functioning.

With regard to moving about and manipulating objects, the ALJ determined J.A.J. had

-11-

no limitations.  The ALJ found that none of the medical records or opinions demonstrated J.A.J. had any limitations in this area of functioning. Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.A.J. had no limitations in this area of functioning.

With regard to caring for yourself, the ALJ determined J.A.J. had no limitations.  In making this determination, the ALJ noted Dr. Harris found J.A.J. was able to take care of her personal needs on a daily basis.  The ALJ pointed out that while Ms. Moore found J.A.J. had a serious problem in this area of functioning, the ALJ pointed out this problem did not relate to J.A.J.'s impairments.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.A.J. had no limitations in this area of functioning.

With regard to health and physical well-being, the ALJ determined J.A.J. had "less than marked" limitations.  In making this determination, the ALJ addressed the pulmonary function questionnaire completed by Dr. Jackson opining J.A.J. had more significant limitations.  The ALJ clearly stated the weight that was given to Dr. Jackson's opinion and the evidence that was used to support this decision not to give controlling weight to Dr. Jackson's opinion. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (ALJ may elect in certain circumstances not to give controlling weight to treating physician's opinion, as record must be evaluated as whole; for treating physician's opinion to have controlling weight, it must be supported by medically acceptable diagnostic techniques and not be inconsistent with other substantial evidence in the case record);  Dixon v. Barnhart, 353 F.3d 602, 606 (8th Cir. 2003) (medical opinions of a treating physician are normally accorded substantial weight, but they must not be inconsistent with other evidence on the record as a whole).  The ALJ pointed out that while Dr. Jackson

-12-

stated J.A.J. had been hospitalized frequently, the evidence revealed J.A.J. was last admitted in 2005.   It is noteworthy, that during the relevant time period there are no treatment notes indicating Dr. Jackson treated J.A.J. bimonthly.  The ALJ also noted Dr. Jackson's opinion that J.A.J. had asthma attacks once a week that left her incapacitated for two days following an attack. The ALJ pointed out the severity and frequency of these attacks was not consistent with J.A.J.'s teachers who indicated that once J.A.J. used her inhaler she was able to function in the classroom.  The record revealed J.A.J. missed a week of school in September as well as some other days; however not all of these days were due to J.A.J.'s impairment.  Ms. Methvin noted J.A.J. missed school at times but that it was not frequent.

The ALJ also addressed Dr. Harris' opinion that J.A.J. had between "less than marked" and "marked" limitations in this area of functioning.  The ALJ stated that he gave less weight to Dr. Harris's opinion regarding this domain because it appeared that Dr. Harris had not reviewed the medical records  regarding the nature of J.A.J.'s physical impairments and thus could not make a fully informed opinion in this area of functioning.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.A.J. had "less than marked" limitations in this area of functioning.

Based on the foregoing, the Court finds substantial evidence to support the ALJ's determination that J.A.J.'s impairments are not functionally equal to any listed impairment.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that Plaintiff's Complaint should be dismissed with

-13-

prejudice.

DATED this 3rd day of March 2011.


/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-